**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                    :

WILLIAM MERRILL, JR., WILLIAM
MERRILL, SR., CORINNA MERRILL, KAYLA
MERRILL, TYLER MERRILL, BRANDON
BITTNER, MEGAN JUDD, SARAH KNIGHT,      Case No.: 6:25-cv-00800-AMN-TWD
MELISSA LABBE,

              Plaintiffs,

    v.

ONONDAGA COUNTY, JOHN/JANE DOES
1-6, RYLEE KIRK, COURTNEE SAWYER,
JHANASIA MCBRIDE,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**RYLEE KIRK'S MOTION TO DISMISS THE**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

GREENBERG TRAURIG, LLP
Michael J. Grygiel (Bar Roll. No. 507829)
Kelly L. McNamee (Bar Roll. No. 520670)
54 Street, 6th Floor
Albany, New York 12207
Tel.: (518) 689-1400
Email: grygielm@gtlaw.com
        mcnameek@gtlaw.com

*Attorneys for Defendant Rylee Kirk*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT ..................................................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 2

STATEMENT OF FACTS .............................................................................................. 3

    A. The Parties. ....................................................................................................... 3

    B. The Road Rage Incident....................................................................................... 4

    C. *Syracuse.com*'s News Article Published on September 25, 2024. .............................. 5

ARGUMENT ................................................................................................................... 5

POINT I     STANDARD OF REVIEW ...................................................................... 5

    A. The *Twombly* and *Iqbal* Pleading Standards.......................................................... 5

    B. Summary Disposition Promotes Significant First Amendment Interests in Defamation Actions Against the Press. ......................................................................... 7

    C. The Application of the Fair Report Privilege Is a Question of Law............................ 8

POINT II    APPLICATION OF THE FAIR REPORT PRIVILEGE COMPELS DISMISSAL OF THE COMPLAINT'S DEFAMATION CLAIM ........................ 10

    A. The Fair Report Privilege Applies to the Challenged Statements. ........................... 10

        1. The Fair Report Privilege Does Not Require Presentation of Plaintiff's Side of the Story.......................................................................................... 12

    B. *Syracuse.com*'s Article Is a Fair and Accurate Account of the Statements Contained In Official Government Records. .............................................................. 15

POINT III   DEFENDANT KIRK IS ENTITLED TO AN AWARD OF HER COSTS AND ATTORNEYS' FEES PURSUANT TO SECTION 70-A OF THE NEW YORK ANTI-SLAPP LAW ........................................................................ 17

CONCLUSION.............................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelson v. Harris*,
973 F.Supp.2d 467 ............................................................................................................7

*Albert v. Loksen*,
239 F.3d 256 (2d Cir. 2001).............................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................5, 6

*Bauer v. Baud*,
2023 WL 2307413 (S.D.N.Y. Mar. 1, 2023) ...................................................................3, 4, 8

*Beary v. West Publishing Co.*,
763 F.2d 66 (2d Cir. 1985)................................................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007).........................................................................................................5, 6

*Biro v. Condé Nast*,
883 F.Supp.2d 441 (S.D.N.Y. 2012)..................................................................................6

*Biro v. Condé Nast*,
963 F.Supp.2d 255 (S.D.N.Y. 2013)..................................................................................7

*Bobulinski v. Tarlov*,
758 F.Supp.3d 166 (2024) ................................................................................................18, 19

*Brewer v. Herald*,
2016 U.S. Dist. LEXIS 110408 (N.D.N.Y. Aug. 18, 2016) ...........................................4, 8, 10

*Brown v. Kopek*,
2011 WL 3737921 (N.D.N.Y. Aug. 24, 2011) .................................................................6

*BYD Co. v. Vice Media LLC*,
2022 U.S. App. LEXIS 5351 (2d Cir. Mar. 1, 2022)........................................................8

*Celle v. Filipino Reporter Enterprises Inc.*,
209 F.3d 163 (2d Cir. 2000)..............................................................................................6

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..............................................................................................3

*Conley v. Gibson*,
 355 U.S. 41 (1957)......................................................................................................6

*Cummings v. City of New York*,
 2020 WL 882335 (S.D.N.Y. Feb. 24, 2020), *aff'd*, 2022WL 2166585
 (2d Cir. 2022)............................................................................................................9

*Daleiden v. Planned Parenthood Federation of America*,
 2022 U.S. App. LEXIS 9086 (2d Cir. Apr. 5, 2022) ...............................................8

*Dworin v. Deutsche*,
 2008 WL 508019 (S.D.N.Y. Feb. 22, 2008)..............................................................3

*Easton v. Public Citizens, Inc.*,
 1991 WL 280688 (S.D.N.Y. Dec. 26, 1991), *aff'd*, 969 F.2d 1043
 (2d Cir. 1992).....................................................................................................8, 9, 14

*Feldman v. Edwab*,
 2011 WL 1298717 (N.D.N.Y. Mar. 31, 2011) ..........................................................6

*Fine v. ESPN, Inc.*,
 11 F.Supp.3d 209 (N.D.N.Y. 2014)...................................................................11, 17

*Fine v. ESPN, Inc.*,
 2013 U.S. Dist. LEXIS 17729 (N.D.N.Y. Feb. 11, 2013) ...........................8, 12, 16

*Fuji Photo File, U.S.A., Inc. v. McNulty*,
 669 F.Supp.2d 405 (S.D.N.Y. 2009)..........................................................................9

*Geiger v. Town of Greece*,
 2007 WL 4232717 (W.D.N.Y. Sept. 4, 2007), *aff'd*, 311 Fed. Appx. 413
 (2d Cir. 2009)...........................................................................................................11

*Geisler v. Petrocelli*,
 616 F.2d 636 (2d Cir. 1980)......................................................................................1

*Gilman v. Spitzer*,
 902 F.Supp.2d 389 (S.D.N.Y. 2012).........................................................................1

*Glantz v. Cook United, Inc.*,
 499 F.Supp. 710 (E.D.N.Y. 1979) ...............................................................9, 14, 15

*Gonzalez v. Gray*,
 69 F.Supp.2d 561 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000)................8

*Harris v. American Accounting Association*,
 2021 U.S. Dist. LEXIS 226517 (N.D.N.Y. Nov. 24, 2021) *aff'd in part, rev'd
 in other part*, 2023 U.S. App. LEXIS 8204 (2d Cir. Ap. 6, 2023) .........................19

iii

*Heilbut v. Cassava Sciences, Inc.*,
2025 U.S. Dist. LEXIS 56283 (S.D.N.Y. Mar. 26, 2025) ......................................................19

*Hudak v. Times Publishing Co.*,
534 F.Supp.2d 546, 572 (W.D. Pa. 2008) ................................................................................12

*Idema v. Wager*,
120 F.Supp.2d 361 (S.D.N.Y.), *aff'd*, 29 Fed. Appx. 676 (2d Cir. 2002) ................................8

*Jeanty v. City of Utica*,
2017 WL 6408878 (N.D.N.Y. Aug. 18, 2017), *aff'd sub nom.*,
*Jeanty v. Cerminaro*, 2023 WL 325012 (2d Cir. Jan. 20, 2023) .................................... *passim*

*Johnson v. City of Newburgh*,
690 F.Supp.3d 224 (S.D.N.Y. 2023)....................................................................................6, 10

*Karp v. Hill & Knowlton, Inc.*,
631 F.Supp. 360 (S.D.N.Y. 1986)..............................................................................................9

*Kesner v. Buhl*,
590 F.Supp.3d 680 (S.D.N.Y. 2022), *aff'd sub nom.*, 2023 WL 407292
(2d Cir. June 20, 2023) ............................................................................................................18

*Kinsey v. New York Times Co.*,
991 F.3d 171 (2d Cir. 2021)........................................................................................................8

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991)..................................................................................................................16

*Mayor & City Council of Baltimore v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013)........................................................................................................5

*Milligan v. United States*,
644 F.Supp.2d 1020 (M.D. Tenn. 2009)...................................................................................10

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964)....................................................................................................................8

*Olivet University v. Newsweek Digital LLC*,
2024 WL 5001841 (2d Cir. Dec. 6, 2024) ...............................................................................16

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.*,
555 U.S. 438 (2009)....................................................................................................................6

*Reid v. GMC Skin Care USA Inc.*,
2016 WL 403497 (N.D.N.Y. Jan. 15, 2016) (Sannes, J.) ..........................................................5

iv

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) (Sannes, J.) ......................................................6

*Southridge Capital Management, LLC v. Lowry*,
    2003 WL 68041 (S.D.N.Y. Jan. 7, 2003) .........................................................................9

*Suffolk County Police Benevolent Association v. Trotta*,
    2024 U.S. Dist. LEXIS 126205 (E.D.N.Y. July 17, 2024)................................................18

*Tacopina v. O'Keeffe*,
    645 Fed. Appx. 7 (2d Cir. 2016)...................................................................................16

*Test Masters Educational Services, Inc. v. NYP Holdings, Inc.*,
    603 F.Supp.2d 584 (S.D.N.Y. 1989)..............................................................................9

*Walker v. Elliott*,
    2010 WL 4916714 (M.D. Pa. Oct. 15, 2010) .................................................................7

*Washington Post Co. v. Keogh*,
    365 F.2d 965 (D.C. Cir. 1966)......................................................................................7

*Yak v. Bank Brussels Lambert*,
    252 F.3d 127 (2d Cir. 2001)..........................................................................................3

*Yohe v. Nugent*,
    321 F.3d 35 (1st Cir. 2003)..........................................................................................15

**State Cases**

*215 West 84th Street Owner LLC v. Bailey*,
    217 A.D.3d 488 (1st Dep't 2023) ...............................................................................20

*Armstrong v. Simon & Schuster, Inc.*,
    85 N.Y.2d 373 (1995) ....................................................................................................7

*Becher v. Troy Publishing Co.*,
    183 A.D.2d 230 (3d Dep't 1992)............................................................................10, 15

*Bouchard v. Daily Gazette Co.*,
    136 A.D. 3d 1233 (3d Dep't 2016)...............................................................................8

*Cholowsky v. Civiletti*,
    69 A.D.3d 110 (2d Dep't 2009)....................................................................................14

*Cottrell v. Berkshire Hathaway, Inc.*,
    26 A.D.3d 787 (4th Dep't 2006)....................................................................................11

*Dillon v. City of New York*,
    261 A.D.2d 34 (1st Dep't 1999) ....................................................................................6

v

*Freeze Right Refrigrigeration & Air Conditioning Services v. City of New York*,
  101 A.D.2d 175 (1st Dep't 1984) ....................................................................10, 16

*Glendora v. Gannett Suburban Newspapers*,
  201 A.D.2d 620 (2d Dep't 1994) ...............................................................................14

*Holy Spirit Association for Unification of World Christianity v.
  New York Times, Co.*, 49 N.Y.2d 63 (1979) ............................................................16

*Hornyak v. Hearst Corp.*,
  66 N.Y.S.2d 848 (Sup. Ct. N. Y. Cnty.), *aff'd*, 272 A.D. 866 (1st Dep't 1947).......................10

*Immuno AG. v. Moor-Jankowski*,
  145 A.D.2d 114 (1st Dep't 1989), *aff'd*, 77 N.Y.2d 235 (1991) ...............................................7

*Karaduman v. Newsday, Inc.*,
  51 N.Y.2d 531 (1980) .................................................................................................7

*Misek Falkoff v. American Lawyer Media, Inc.*,
  300 A.D.2d 215 (1st Dep't 2002), *lv. to app. denied*, 100 N.Y.2d 508 (2003),
  *rearg. denied*, 100 N.Y.2d 616 (2003), *cert. denied*, 541 U.S. 939 (2004)..............................16

*Mulder v. Donaldson, Lufkin & Jenrette*,
  161 Misc.2d 698 (Sup. Ct. N.Y. Cnty. 1994) ..........................................................15

*Pelayo v. Celle*,
  270 A.D.2d 469 (2d Dep't 2000) .................................................................................9

*Reeves v. Associated Newspapers, Ltd.*,
  218 N.Y.S.3d 19 (1st Dep't 2024) ............................................................................20

*Shulman v. Hunderfund*,
  12 N.Y.3d 143 (2009) ...............................................................................................16

## State Statutes

New York *Civil Rights Law* § 70-a(1)(a)...................................................................... *passim*

New York *Civil Rights Law* § 74................................................................................ *passim*

New York *Civil Rights Law* § 76-a.......................................................................17, 18

## Rules

New York Civil Practice Law and Rule 3211(a)(7) .....................................................20

Federal Rule of Civil Procedure 12(b)(6) ................................................................. *passim*

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS, § 611, Comment a (1977) ......................................................15

SACK ON DEFAMATION, § 7.3.5 (4th ed. 2011)..............................................................................9

## PRELIMINARY STATEMENT

Defendant Rylee Kirk, a former reporter for *Syracuse.com*, respectfully submits this memorandum of law in support of her motion requesting dismissal of the Complaint's defamation claim against her as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6), and for an award of costs and attorney's fees as authorized by N.Y. *Civil Rights Law* §70-a(1)(a).

The Onondaga County Sheriff obtained an arrest warrant for Plaintiff William Merrill, Jr. after he was allegedly involved in a road rage incident while driving in the City of Syracuse. (Compl. ¶¶ 24-30, 40)  After Plaintiff turned himself in to the Sheriff's Office, the Onondaga County District Attorney charged Plaintiff with a variety of criminal offenses in connection with the matter.  (*Id*. ¶¶ 41, 61, 106)

Plaintiff commenced this action by filing a Complaint on or about June 20, 2025.  The gravamen of the Complaint against Ms. Kirk is that certain statements she obtained from law enforcement reports and court records pertaining to authorities' criminal investigation of the road rage incident and Plaintiff's arrest, as republished in a news article in *Syracuse.com* on September 25, 2024, constitute actionable defamation.[1]  (*Id*. ¶¶ 3, 114)

As set forth more fully below, Plaintiff's defamation claim (seventh cause of action) is legally insupportable because the *Syracuse.com* article he challenges is a fair and accurate account, based on official government records, of allegations Plaintiff brandished a gun, threatened to kill two women, and directed racial slurs at his antagonists during the vehicular encounter.  It is

---

[1] The Complaint apparently asserts on behalf of all Plaintiffs a single claim sounding in defamation *per se* against Ms. Kirk. (Compl. ¶¶ 112)  However, William Merrill, Jr. is the sole Plaintiff named in the *Syracuse.com* article challenged by the Complaint's seventh cause of action.  None of the other Plaintiffs is named or otherwise identified or referenced in the article. Thus, they cannot satisfy the threshold "of and concerning" element of a defamation claim.  *Gilman v. Spitzer*, 902 F.Supp.2d 389, 394 (S.D.N.Y. 2012) ("it is essential that the allegedly defamatory comment refer to the plaintiff") (internal quotations and citation omitted); *see also Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  Accordingly, William Merrill, Jr. is referred to herein as the singular "Plaintiff" in this motion.

therefore protected from defamation liability by the "fair report" privilege enacted in Section 74 of the N.Y. *Civil Rights Law*.  In furtherance of the First Amendment interests directly implicated in this case, and as required by federal pleading standards, the Complaint's claim against Ms. Kirk should promptly be dismissed and she should be released from this lawsuit.  Further, Ms. Kirk must be awarded her costs and attorney's fees pursuant to New York's Anti-SLAPP law, *Civil Rights Law* § 70-a(1)(a), because *Syracuse.com* reported on a privileged matter of acute public interest and the Complaint's defamation claim has no substantial basis in law.

## Summary of Argument

The fair report privilege is an exception to the general rule that the republisher of a defamatory statement is subject to liability as if it had originally published the statement.  In contrast to that general rule, the fair report privilege immunizes from liability those who — as Ms. Kirk did here — fairly and accurately report on governmental actions so long as the report accurately relates the government's description of the official action, regardless of whether the underlying facts provided by the government are true.  In this case, Ms. Kirk's reportage was a fair and accurate account of the events, as depicted in law enforcement reports and subsequent court proceedings, leading to Plaintiff's arrest on criminal charges stemming from the road rage incident. The Complaint does not, and cannot, allege that Ms. Kirk's reporting about Plaintiff's involvement with the criminal justice system was inaccurate.

The circumstances of this case reveal that Plaintiff's real quarrel with Ms. Kirk's reporting is not with any supposedly inaccurate statements by *Syracuse.com* in reporting the information obtained by Ms. Kirk from law enforcement reports and court records relative to Plaintiff's underlying conduct and arrest, all of which is privileged as fair comment under long-settled New York law.  Rather, it is with what Plaintiff apparently believes are false statements made to the Onondaga County Sheriff's Office by the other participants in the road rage incident.  Plaintiff is,

2

of course, entitled to take issue with the validity of his arrest, and/or with their description of his conduct leading to his arrest.  As the Complaint makes clear, he has certainly done that.  What he is not entitled to do, however, is to maintain a defamation suit against Ms. Kirk for accurately reporting on the charges brought against him for crimes allegedly committed in the community to which *Syracuse.com* provides news.

In the final analysis, Plaintiff's defamation claim blatantly disregards that the First Amendment's core values protect the free flow of information on matters of public interest and concern.  Further, the Complaint is based on a theory that subverts constitutional free speech principles by shifting press coverage of Plaintiff's arrest and the criminal charges with which he was confronted out of the marketplace of public discourse and into the courtroom.  For the reasons presented below, this action is meritless under any standard.  Dismissal of the Complaint under Rule 12(b)(6) is clearly warranted, as Plaintiff's defamation claim is not sustainable as a matter of law, together with an award of costs and attorney's fees as mandated by N.Y. *Civil Rights Law* § 70-a(1)(a).

### STATEMENT OF FACTS[2]

#### A.  The Parties.

Plaintiff William Merrill, Jr. is a resident of Oneida County, New York.  (Compl. ¶ 8)

---

[2]  This section is derived from the factual allegations of the Complaint dated June 20, 2025, which Defendant Rylee Kirk accepts as true for the limited purpose of the instant motion.  This Court can consider the Article on which Plaintiff is suing (*see* **Ex. 1** to Grygiel Decl.) on a motion to dismiss along with other documents integral to the Complaint's allegations.  S*ee Bauer v. Baud*, 2023 WL 2307413, at *1 (S.D.N.Y. Mar. 1, 2023) (on Rule 12 motion, considering articles alleged to be defamatory submitted as exhibits by defendants); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (documents "integral to the . . . [c]omplaint" may be considered on a motion to dismiss); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted); *Dworin v. Deutsche*, 2008 WL 508019, *3 (S.D.N.Y. Feb. 22, 2008) (granting motion to dismiss defamation claims based on consideration of publications complained of).  In deciding threshold motions to dismiss defamation complaints on the basis of the fair report privilege, courts routinely compare official government records, including law enforcement reports, with the publication at issue in order to determine its

At the time of the events alleged in the Complaint, Defendant Rylee Kirk was a resident of Onondaga County, New York (Compl. ¶ 21)

**B.  <u>The Road Rage Incident</u>.**

On September 13, 2024, Plaintiff was driving in Syracuse, New York, when he became engaged in a traffic encounter with a vehicle driven by Defendant Courtnee Sawyer and in which Defendant Jhanasia McBride was a passenger.  (Compl. ¶¶ 24-30)  As a result of this encounter, Defendants Sawyer and McBride filed purportedly false reports with the Onondaga County Sheriff claiming that Plaintiff had:

- Threatened them with a gun;

- Used racial slurs;

- Damaged their vehicle;

- Driven recklessly and attempted to run them off the road;

- Threatened to kill them; and

- Committed other criminal acts.

(*Id*. ¶ 105)

On September 20, 2024, a warrant was issued for Plaintiff's arrest.  (Compl. ¶ 40)  Based on the allegedly false reports filed by Defendants Sawyer and McBride, Plaintiff was charged with "Criminal Possession of a Weapon in the Third Degree (a felony), Menacing in the Second Degree, Reckless Endangerment in the Second Degree, and Criminal Mischief."  (*Id*. ¶¶ 41, 106)

---

actionability.  *See, e.g., Brewer v. Herald*, 2016 U.S. Dist. LEXIS, at *12 n.8 (N.D.N.Y. Aug. 18, 2016) (taking judicial notice of police press release and disputed newspaper publications for purpose of applying Section 74 privilege); *Bauer*, 2023 WL 2307413, at *1 (taking judicial notice of documents "heavily referenced in the Complaint . . . and relied upon for legal conclusions" in applying fair report privilege).

4

**C.** ***Syracuse.com*'s News Article Published on September 25, 2024.**

On September 25, 2024, *Syracuse.com* published a news article (the "Article") written by Defendant Kirk titled "*Central NY man threatens to kill women, uses N-word in road rage incident, authorities say.*"  (Compl. ¶ 66; **Ex. 1** to Grygiel Decl.)  The Article reported the following "false allegations by Defendants Sawyer and McBride" (Compl. ¶ 3) to the Onondaga County Sheriff's Office:

- That William Merrill, Jr. threatened to kill two women and a child during the traffic incident on September 13, 2024;

- That William Merrill, Jr. used racial slurs, specifically the "N-word," during the traffic incident;

- That William Merrill, Jr. displayed a handgun during the incident and waved it out the window of his vehicle;

- That William Merrill, Jr. attempted to run the women's car off the road;

- That William Merrill, Jr. threw a water bottle at the women's car;

- That William Merrill, Jr. physically attacked the women's vehicle, punching the mirror and kicking the door, causing damage;

- That William Merrill, Jr. sent threatening emails to the Onondaga County Sheriff's Office claiming he was stalking deputies; and

- That William Merrill, Jr. had threatened or was threatening to harm deputies.

*(Id*. ¶¶ 114a.-h.)

**ARGUMENT**

**POINT I**

**STANDARD OF REVIEW**

**A. The *Twombly* and *Iqbal* Pleading Standards.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"  *Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, *8 (N.D.N.Y. Jan. 15, 2016) (Sannes, J.) (quoting *Mayor & City Council*

*of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) and *Bell Atl. Corp. v. Twombly*, 550

U.S. 554, 570 (2007)); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, *3 (N.D.N.Y. Jan.

12, 2016) (Sannes, J.) (same). In other words, a complaint must allege facts that "raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.[3]   The ultimate question is whether

the "*factual content*" in the complaint is sufficient to allow "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis

supplied). In applying this standard, "[a]ny legal conclusions, deductions or opinions couched as

factual allegations are not accorded a presumption of truthfulness." *Brown v. Kopek*, 2011 WL

3737921, *3 (N.D.N.Y. Aug. 24, 2011).

"Under New York law, the elements of a defamation claim are: '(i) a defamatory statement

of fact, (ii) that is false, (iii) published to a third party, (iv) and concerning the plaintiff, (v) made

with the applicable level of fault on the part of the speaker (vi) either causing special harm or

constituting slander per se, and (vii) *not protected by privilege*.'" *Johnson v. City of Newburgh*,

690 F.Supp.3d 224, 240 (S.D.N.Y. 2023) (emphasis supplied) (citing *Albert v. Loksen*, 239 F.3d

256, 265-66 (2d Cir. 2001) (quoting *Dillon v. City of New York*, 261 A.D.2d 34, 37-38 (1st Dep't

1999)); *see also Feldman v. Edwab*, 2011 WL 1298717, at *5 (N.D.N.Y. Mar. 31, 2011)); *Celle v.

Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *Biro v. Condé Nast*, 883 F.Supp.2d

441, 456 (S.D.N.Y. 2012). The *Twombly* and *Iqbal* pleading standards govern all aspects of the

---

[3] In *Twombly*, the Supreme Court stated that the oft-quoted observation in *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard" and "has earned its retirement." 550 U.S. at 563; *see also Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 (2009) ("'no set of facts' pleading standard [was] rejected as too lenient" in *Twombly*). Under the now prevailing standard, a plaintiff can only defeat a motion to dismiss by pointing to specific factual content in the complaint sufficient to demonstrate a plausible claim for relief, which requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Court's threshold analysis of these elements, "both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action." *Walker v. Elliott*, 2010 WL 4916714, *4 (M.D. Pa. Oct. 15, 2010).

**B.** **<u>Summary Disposition Promotes Significant First Amendment Interests in Defamation Actions Against the Press.</u>**

To protect public debate and safeguard freedom of speech, New York courts have long favored dismissal of defamation claims at the earliest possible stage of proceedings. *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 545, 548-49 (1980) (early adjudication of libel claims should be encouraged in order to protect the "free flow of information" under the First Amendment and to avoid the chilling effect of unwarranted claims on the right to free expression). "Because a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F.Supp.2d 467, 481 (S.D.N.Y. (2013) (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)), *aff'd*, 876 F.3d 413 (2d Cir. 2017. *See also Biro v. Condé Nast*, 963 F.Supp.2d 255, 264 (S.D.N.Y. 2013) (same); *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 (1995) (same). To delay the disposition of a libel action unnecessarily "is not only to countenance waste and inefficiency but to enhance the value of such actions as instruments of harassment and coercion inimical to the exercise of First Amendment rights." *Immuno AG. v. Moor-Jankowski*, 145 A.D.2d 114, 128 (1st Dep't 1989), *aff'd*, 77 N.Y.2d 235 (1991).

On the facts alleged, dismissal of the Complaint's defamation claim against Ms. Kirk is plainly warranted in this case given Plaintiff's inability to overcome the fair report privilege, codified at section 74 of the New York *Civil Rights Law* ("Section 74"). New York federal and state courts — including this Court — routinely apply the privilege in rejecting defamation

7

complaints based on the pleadings. *Jeanty v. City of Utica*, 2017 WL 6408878 (N.D.N.Y. Aug. 18, 2017) (Sannes, J.) (granting newspaper's Rule 12 motion to dismiss defamation claim as pleaded based on Section 74), *aff'd sub nom.*, *Jeanty v. Cerminaro*, 2023 WL 325012 (2d Cir. Jan. 20, 2023); *Brewer v. Herald*, 2016 U.S. Dist. LEXIS 110408, *12-13 (N.D.N.Y. Aug. 18, 2016) (Sharpe, J.) (granting newspaper's Rule 12 motion to dismiss defamation claims on the basis of Section 74); *Fine v. ESPN, Inc.*, 2013 U.S. Dist. LEXIS 17729, *11-12 (N.D.N.Y. Feb. 11, 2013) (Kahn, J.) (dismissing defamation claim based on privileged "fair and true reports"); *Bauer v. Baud*, 2023 WL 2307413, at *7-8 (S.D.N.Y. Mar. 1, 2023) (applying Section 74 to dismiss defamation claim); *Easton v. Pub. Citizens, Inc.*, 1991 WL 280688, *2 (S.D.N.Y. Dec. 26, 1991) (applying fair report privilege to dismiss libel complaint as a matter of law), *aff'd*, 969 F.2d 1043 (2d Cir. 1992); *Gonzalez v. Gray*, 69 F.Supp.2d 561, 568-70 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000); *Idema v. Wager*, 120 F.Supp.2d 361 (S.D.N.Y.), *aff'd*, 29 Fed. Appx. 676 (2d Cir. 2002); *Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021); *BYD Co. v. Vice Media LLC*, 2022 U.S. App. LEXIS 5351, at *4-5 (2d Cir. Mar. 1, 2022); *Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 U.S. App. LEXIS 9086, at *4-5 (2d Cir. Apr. 5, 2022); *Bouchard v. Daily Gazette Co.*, 136 A.D. 3d 1233, 12345 (3d Dep't 2016) (motion to dismiss granted where a "liberal reading of defendants' statements in the context of the article demonstrates that the statements are substantially accurate and, thus, a fair and true report of the DOJ press release").

## C. **The Application of the Fair Report Privilege Is a Question of Law.**

The First Amendment reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). In furtherance of these fundamental constitutional values, Section 74 of the *Civil Rights Law* states, in pertinent part, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial

8

proceeding . . . or other official proceeding[.]" N.Y. *Civ. Rights Law* § 74. "The New York legislature enacted this statute in order to avoid stifling an active, thriving, and untrammeled press and to ensure that the press receive broad protection." *Cummings v. City of New York*, 2020 WL 882335, at \*15 (S.D.N.Y. Feb. 24, 2020) (internal quotations and citation omitted), *aff'd*, 2022 WL 2166585 (2d Cir. 2022). Under this statute, a report of an official government proceeding is entitled to absolute immunity, regardless of whether it repeats allegations or statements by participants in the proceeding that are alleged to be false, as long as the report constitutes a "fair and true" account of the proceeding. *See Beary v. West Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985); *Glantz v. Cook United, Inc.*, 499 F.Supp. 710, 715 (E.D.N.Y. 1979); *Pelayo v. Celle*, 270 A.D.2d 469, 469 (2d Dep't 2000); *see also* SACK ON DEFAMATION, § 7.3.5 (4th ed. 2011) (underlying "truth" is "irrelevant" under fair report privilege).

The fair report privilege provides that those who, like Ms. Kirk in the instant case, fairly and accurately report on certain types of official government action are categorically immune from liability for claims arising out of such reports. *Fuji Photo File, U.S.A., Inc. v. McNulty*, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009) ("[t]he section 74 privilege is absolute"). Whether challenged statements are privileged under Section 74 is a question of law for this Court. *Jeanty v. City of Utica*, 2017 WL 6408878, at \*19; *Karp v. Hill & Knowlton, Inc.*, 631 F.Supp. 360, 363 (S.D.N.Y. 1986); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F.Supp.2d 584, 589 (S.D.N.Y. 2009); *Southridge Cap. Mgmt., LLC v. Lowry*, 2003 WL 68041, \*2 (S.D.N.Y. Jan. 7, 2003); *Easton v. Pub. Citizens*, 1991 WL 280688, at \*3.

As discussed below, the statements about which Plaintiff complains were contained in official reports and court documents based on information provided to the Onondaga County Sheriff by Defendants Sawyer and McBride concerning the purported road rage incident involving

9

Plaintiff William Merrill, Jr.  (Compl. ¶ 3)  The Complaint itself unequivocally establishes that the Article accurately reported the description of Plaintiff's conduct as conveyed to law enforcement authorities, culminating in the criminal charges brought against him by the Onondaga County District Attorney.  (*Cf.* Compl. ¶¶ 105-106 *with id.* at ¶ 114 and **Ex. 1** to Grygiel Decl.)  Nothing more is required for the privilege to prevail.  Its application is dispositive here and, as discussed in the next section, requires dismissal of the Complaint's seventh cause of action against Ms. Kirk.

<u>POINT II</u>

### APPLICATION OF THE FAIR REPORT PRIVILEGE COMPELS DISMISSAL OF THE COMPLAINT'S DEFAMATION CLAIM

**A.  <u>The Fair Report Privilege Applies to the Challenged Statements</u>.**

New York courts have broadly construed Section 74 "so as to provide broad protection to news accounts of . . . official proceedings." *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233 (3d Dep't 1992); *Johnson v. City of Newburgh*, 690 F.Supp.3d at 240.  The test "is whether the report 'concerns actions taken by a person officially empowered to do so.'" *Freeze Right Refrig. & Air Conditioning Serv. v. City of New York*, 101 A.D.2d 175, 182 (1st Dep't 1984) (citation omitted). An arrest by a police officer is an official action, and a report of the fact of the arrest or of the charge of a crime made by a law enforcement official is within the privilege.  *Brewer v. Herald*, 2016 U.S. Dist. LEXIS 110408, at *12 (newspaper reports based on official police press release pertaining to defamation plaintiff's criminal arrest is shielded from liability by Section 74); *see also Hornyak v. Hearst Corp.*, 66 N.Y.S.2d 848, 849 (Sup. Ct. N.Y. Cnty.) (applying privilege to report of arrest, charge, commitment, indictment, parole and discharge), *aff'd*, 272 A.D. 866 (1st Dep't 1947).  Accord, *Milligan v. United States*, 644 F.Supp.2d 1020, 1034 (M.D. Tenn. 2009) ("an arrest by a law enforcement official constitutes an official action such that 'a report of the fact of the arrest or of the charge of crime' falls within the scope of the fair report privilege") (citation

10

omitted).    The publication of the fact that one has been arrested, and upon what charge, is accordingly not actionable if it is a fair and accurate recounting of a government report.

Courts in New York and elsewhere have applied the fair report privilege to newspaper reports concerning law enforcement investigations.  *Fine v. ESPN, Inc.*, 11 F.Supp.3d 209, 216 (N.D.N.Y. 2014) (finding investigation by Syracuse Police Department was "an official proceeding under § 74"); *Jeanty v. City of Utica*, 2017 WL 6408878, at *17 (noting that police "arrests and investigations may constitute official proceedings"); *Geiger v. Town of Greece*, 2007 WL 4232717, at *6 (W.D.N.Y. Sept. 4, 2007) ("the Attorney General's investigation into plaintiff's business practices was an official proceeding"), *aff'd*, 311 Fed. Appx. 413 (2d Cir. 2009); *see also Cottrell v. Berkshire Hathaway, Inc.*, 26 A.D.3d 787, 787 (4th Dep't 2006) (privilege encompassed report based not only on documents filed in federal court, but also independent interviews with several law enforcement officials about underlying charges against plaintiff). As these authorities establish, the Article's reporting of the criminal investigation into Plaintiff's vehicular encounter with Defendants Sawyer and McBride, along with his subsequent arrest and the criminal charges filed against him, are protected by the Section 74 privilege.

Moreover, the Complaint does not dispute that Ms. Kirk reported the statements at issue — which were published with full source attribution in the Article — from official government documents.  Indeed, that allegation permeates the Complaint.  (Compl. ¶¶ 1, 3, 32, 41, 64, 104-105) Thus, in obtaining information from law enforcement authorities on a pending Onondaga County criminal proceeding "for the express purpose of public dissemination and then publishing that information," Ms. Kirk "was furthering the public interest in ensuring that those who administer justice should always act under the sense of public responsibility and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."

11

*Hudak v. Times Publ'g Co.*, 534 F.Supp.2d 546, 572 (W.D. Pa. 2008) (internal quotations and citation omitted).  *See also Fine*, 2013 U.S. Dist. LEXIS 17729, at *8 ("Section 74's purpose is 'the protection of reports of . . . proceedings which are made in the public interest'") (citation omitted).

### 1.  The Fair Report Privilege Does Not Require Presentation of Plaintiff's Side of the Story.

The Complaint alleges that Ms. Kirk "had access to, or should have obtained, the dashboard camera footage" that allegedly contradicted the allegations against Plaintiff in the police reports filed by Defendants Sawyer and McBride. (Compl. ¶ 117a.)  This reduces to the claim that Ms. Kirk did not present Plaintiff's version of events in the underlying criminal investigation − which is not required for a report to qualify as "fair and true."  This Court's application of the Section 74 privilege in *Jeanty v. City of Utica*, *supra*, highlights this point.

The plaintiff in *Jeanty* had been convicted and sentenced on drug charges. Following his successful application for post-conviction relief, he asserted federal civil rights claims against various government officials, including officers in the police department who arrested him and the district attorney who prosecuted him, along with a pendent state law defamation claim against a local newspaper.  In support of his defamation claim, which was based on a report of an interview in which the district attorney explained the unusual circumstances resulting in his decision not to oppose the plaintiff's release from prison, the plaintiff alleged that the article published certain statements about him "*despite knowing them to be false*." 2017 WL 6408878, at *17 (emphasis supplied).  More specifically, the complaint alleged that the reporter " . . . chose to accept and print [district attorney's] false allegations and opinions *despite having official records and documents related to his criminal case*," and that the reporter agreed with the district attorney "that she would write an article consistent with the facts as he alleged them *as opposed to the facts from the record*

12

*in her possession.*" *Id*. (internal quotations omitted; emphasis supplied).   In a well-reasoned decision, Judge Sannes had little difficulty dismissing the defamation claim as barred by the Section 74 privilege:

> Thus, Plaintiff's real complaint is that [reporter] slavishly copied [district attorney's] statements without corroborating them or telling Plaintiff's side of the story.   However, the accuracy of [district attorney's] statements is beside the point. [Reporter] was not required to fact-check the D.A.'s official statements, only to provide a fair and true report of them.

*Id*. at 19.   In language particularly relevant to this case, the *Jeanty* Court pointedly rejected the claim that the newspaper article at issue omitted certain facts favorable to the plaintiff that were available in court records:

> [The] reporting was nonetheless protected by the privilege to the extent the article was a fair and true report of [district attorney's] official statements. Moreover, Plaintiff does not allege that [reporter] omitted facts *from [district attorney's] account* so as to alter the accuracy of the article as a report of his official statements.

*Id*. at *19 n.26 (emphasis in original).

So too here, where Plaintiff "does not dispute that the article accurately reflects the statements" in the reports prepared by the Onondaga County Sheriff's Office in the course of its investigation into the road rage incident allegedly involving Plaintiff, but instead claims that Ms. Kirk was obligated to report additional information in the form of dashboard camera footage that was *not* part of the government-sourced information, but that Plaintiff provided to the District Attorney's Office only after his arrest.  *Id*. at *19; *see* **Ex. 2** to Grygiel Decl.  Acceptance of this argument would defeat the fair report privilege's purpose and render chimerical its protection for accurate news reporting of official actions — including law enforcement investigations and criminal prosecutions — by government authorities.

This Court's decision in *Jeanty* was summarily affirmed on appeal:

13

> In his amended complaint, Jeanty asserts that the author of the article, defendant Micaela Parker, published the allegedly defamatory statements by D.A. McNamara concerning the circumstances leading to his arrest and subsequent application for post-conviction relief ***despite knowing them to be false***. The amended complaint, however, does not allege that Parker or the other Press Defendants reported the District Attorney's statements inaccurately. Therefore, all the statements that Jeanty alleges were defamatory in the article, ***even if false***, were fair and true reports of the comments by a government official —namely, the District Attorney — regarding a criminal case. As such, they are absolutely privileged under Section 74.

*Jeanty v. Cerminaro*, 2023 WL 325012, at \*2 (emphasis supplied). The Second Circuit's ruling is dispositive here, and requires dismissal of the Complaint's defamation claim as a matter of law on the basis of the fair report privilege. *See Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009) ("no requirement that the publication report the plaintiff's side of the controversy"); *Glendora v. Gannett Suburban Newspapers*, 201 A.D.2d 620, 620 (2d Dep't 1994) (same). Again, that Plaintiff disputes the truth of the events related to law enforcement authorities by Defendants Sawyer and McBride does not defeat Ms. Kirk's privilege to report on those events. Indeed, the purpose of the privilege is precisely to enable journalists to report on official actions and legal proceedings without fear that they will be held liable in defamation for repeating allegations or statements by participants in those actions that are alleged to be false. *See Easton v. Pub. Citizens*, 1991 WL 280688, at \*5; *Glantz v. Cook United*, 499 F.Supp. at 715.

At bottom, the Complaint's repeated assertion that Ms. Kirk reported and *Syracuse.com* published "false allegations" in police reports is irrelevant to application of the fair report privilege. The law is directly to the contrary: under Section 74, a report of an official proceeding is entitled to immunity, regardless of whether it repeats allegations or statements by participants in the proceeding that are alleged to be false,[4] so long as the report constitutes a "fair and true" account

---

[4] As the Court can readily discern from the Complaint, multiple paragraphs assert that "Defendants Sawyer and McBride filed false police reports" (Compl. ¶ 1) with the Onondaga County Sheriff as the predicate for the allegedly defamatory statements reported in the Article (*id*. at ¶ 3), thereby reinforcing

14

of the proceeding as described by a government source. *Glantz v. Cook United*, 499 F.Supp. at 715 ("[E]ncompassed within the privilege is the right to publish a 'fair and true' report which contains information that is 'false' as a matter of fact."); *Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc.2d 698, 705 (Sup. Ct. N.Y. Cnty. 1994) ("The question is not whether or not the statement is 'true.'  The question is whether it is a substantially accurate description of the claims made in the . . . proceeding  . . ."); *see also* RESTATEMENT (SECOND) OF TORTS, § 611, cmt. a (1977) ("[T]he privilege exists even though the publisher himself does not believe the defamatory words he reports to be true ***and even when he knows them to be false***.") (emphasis supplied). In other words, the fair report inquiry does not focus on the truth of the events that either underlie or are the subject of the official action or proceeding — "'accuracy' for fair report purposes refers only to the factual correctness of the events reported and not to the truth about the events that actually transpired." *Yohe v. Nugent*, 321 F.3d 35, 44 (1st Cir. 2003).

## B. *Syracuse.com*'s Article Is a Fair and Accurate Account of the Statements Contained In Official Government Records.

New York law affords news reports of official proceedings a wide degree of liberality when courts consider the "fair and true" determination. *Jeanty v. Cerminaro*, 2023 WL325012, at *2 ("New York courts have broadly construed 'official proceedings' under Section 74"); *Becher*, 183 A.D.2d. at 233 ("The case law has established a liberal interpretation of the 'fair and true report' standard of Civil Rights Law § 74 so as to provide broad protection to news accounts of judicial or other official proceedings.").  As emphasized by the New York Court of Appeals:

> [T]he language used [in the publication] should not be dissected and analyzed with a lexicographer's precision.  This is so because a newspaper article is, by

---

that Plaintiff takes issue with the truth of those statements made to law enforcement authorities rather than with any statements originating with Ms. Kirk or *Syracuse.com*.

15

its very nature, a condensed report of events which must, of necessity, reflect
to some degree the subjective viewpoint of its author.

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times, Co.*, 49 N.Y.2d 63, 68

(1979) (hereinafter, "*Holy Spirit Ass'n*"); *see also Freeze Right Refrig. & Air Conditioning Serv.*,

101 A.D.2d at 183 (publication "need not be a verbatim account or even a precisely accurate report

of the proceeding"); *Olivet Univ. v. Newsweek Digital LLC*, 2024 WL 5001841, at *4 (2d Cir. Dec.

6, 2024); *Tacopina v. O'Keeffe*, 645 Fed. Appx. 7, 9 (2d Cir. 2016). This is consistent with the

common law of libel, which "overlooks minor inaccuracies and concentrates upon substantial

truth."[5] *Shulman v. Hunderfund*, 12 N.Y.3d 143, 150 (2009) (quoting *Masson v. New Yorker*

*Magazine, Inc.*, 501 U.S. 496 (1991)).

Tellingly, the Complaint acknowledges time and again that the statements Plaintiff

challenges were based entirely on information imparted to the Onondaga County Sheriff's Office

by Defendants Sawyer and McBride. (Compl. ¶¶ 1, 3, 32, 41, 64, 68, 104-105) The Complaint

does not allege that Ms. Kirk inaccurately reported those statements, or that there were deficiencies

or errors in the Article's attribution of those statements.

> Plaintiff does not contest that the . . . articles are fair and true reports; on the
> contrary, Plaintiff simply quotes the articles and explains the allegedly libelous
> nature of statements contained therein, suggesting that the source of Plaintiff's
> claim as to these two articles may be that they are, if anything, *too* accurate in
> reporting what was said.

*Fine*, 2013 U.S. Dist. LEXIS 17729, at *11-12 (emphasis in original). The Complaint's dispute

with the truth of the statements in the Onondaga County Sheriff's reports and court records

---

[5] As with the defense of truth generally, all that is necessary for the privilege to attach is that the article be "substantially accurate." *Holy Spirit Ass'n*, 49 N.Y.2d at 67 ("[f]or a report to be characterized as 'fair and true' within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate"); *Misek Falkoff v. Am. Lawyer Media, Inc.*, 300 A.D.2d 215 (1st Dep't 2002), *lv. to app. denied*, 100 N.Y.2d 508 (2003), *rearg. denied*, 100 N.Y.2d 616 (2003), *cert. denied*, 541 U.S. 939 (2004).

16

reviewed by Ms. Kirk in the course of her journalistic newsgathering is simply not actionable for the reasons stated above.

Indeed, even though *Syracuse.com* need not have duplicated or tracked the official statements for the privilege to apply, the Article has plainly done so here — paragraphs 114a.-h. of the Complaint each challenge either direct quotations or statements expressly attributed to "court documents," "court papers," or "deputies" in the Sheriff's Office. (**Ex. 1** to Grygiel Decl.) *Fine*, 11 F.Supp.3d at 218 ("quotations and summaries of materials that a publication explicitly identifies as part of an official proceeding are reports 'of' that that proceeding"). Moreover, the headline's use of the qualifier "authorities say" conspicuously signaled to readers that the reporting was based on information acquired from official governmental sources. These quotations, attributions, and headline "could only be understood as a community newspaper reporting information obtained directly from" the law enforcement investigation leading to Plaintiff's arrest on a litany of serious criminal charges, as well as from associated court documents. *Jeanty*, 2017 WL6408878, at *18. Section 74 of the *Civil Rights Law* recognizes this, and compels dismissal of the Complaint.

## POINT III

### DEFENDANT KIRK IS ENTITLED TO AN AWARD OF HER COSTS AND ATTORNEYS' FEES PURSUANT TO SECTION 70-A OF THE NEW YORK ANTI-SLAPP LAW

New York law recognizes the danger posed to free speech when a party to a public controversy seeks to use the judicial process to retaliate against those who publicly comment on that controversy through what is known as a "Strategic Lawsuit Against Public Participation," or "SLAPP" suit. Specifically, New York's Anti-SLAPP law, as amended in 2020, applies to any claim based upon, in relevant part, "any communication in a place open to the public or a public forum in connection with an issue of public interest[.]" N.Y. *Civ. Rights Law* § 76-a(1)(a). The

17

statute mandates that "'[p]ublic interest' shall be construed broadly, and shall mean any subject other than a purely private matter." *Id.* § 76-a(1)(d). In other words, the scope of New York's anti-SLAPP protection encompasses all public communications on any nonprivate matter. *Kesner v. Buhl*, 590 F.Supp.3d 680, 693 (S.D.N.Y. 2022), *aff'd sub nom.*, 2023 WL 407292 (2d Cir. June 20, 2023) (citing N.Y. *Civ. Rights Law* § 76-a). Here, as noted, the Article fairly and accurately reports on official proceedings concerning allegations that Plaintiff threatened to kill women and used racial slurs in connection with a road rage incident — issues of undeniable public interest to the Syracuse community. The Article is therefore covered by the Anti-SLAPP law, as its reporting is plainly "in connection with an issue of public interest." N.Y. *Civ. Rights Law* § 76-a(1)(a).

Section 70-a of New York's Anti-SLAPP law provides for a mandatory fee award in anti-SLAPP cases where, as here, the action "was commenced or continued without a substantial basis in fact and law[.]" *See* N.Y. *Civ. Rights Law* § 70-a(1)(a). District courts have disagreed over the applicability of certain aspects of New York's Anti-SLAPP statute in federal court, with Section 70-a's fee provision often taking center stage in such debate. *See Suffolk Cnty. Police Benevolent Ass'n v. Trotta*, 2024 U.S. Dist. LEXIS 126205, at *11-12 (E.D.N.Y. July 17, 2024) (collecting cases). While Ms. Kirk acknowledges this conflict, she respectfully submits that the plain language of Section 70-a, together with Second Circuit case law interpreting similar fee-shifting provisions, compels the conclusion that Section 70-a is substantive in nature and, as such, applicable in federal diversity actions.

Recently, Judge J. Paul Oetken of the Southern District of New York came to the same conclusion in what is arguably the most thorough decision on the topic to date. *See Bobulinski v. Tarlov*, 758 F.Supp.3d 166, 183-86 (2024). There, the district court engaged in a careful analysis of Supreme Court precedent instructing federal district courts sitting in diversity to "apply state

18

substantive law and federal procedural law," as well as of Second Circuit caselaw applying such guidance in the specific context of state anti-SLAPP laws. *Id.* (citations omitted). Finding that Section 70-a "is doing no procedural work" and is "merely defining the substantive standard for entitlement to attorney's fees," the *Bobulinski* court held the fee-shifting provision is substantive and therefore applicable in federal court. *Id.* at 185-86; *see also Heilbut v. Cassava Scies., Inc.*, 2025 U.S. Dist. LEXIS 56283, \*28 (S.D.N.Y. Mar. 26, 2025) (same). It bears note that one of the few decisions from this district addressing Section 70-a's fee-shifting provision in federal district court appears to align with the *Bobulinski* holding. *See Harris v. Am. Accounting Ass'n*, 2021 U.S. Dist. LEXIS 226517, \*37 (N.D.N.Y. Nov. 24, 2021) (D'Agostino, J.) (finding defendants were "entitled to an award of costs and attorney's fees under New York's anti-SLAPP statute" because the case fell within New York Anti-SLAPP law and was commenced "without a substantial basis in fact and law"), *aff'd in part, rev'd in other part*, 2023 U.S. App. LEXIS 8204 (2d Cir. Ap. 6, 2023).

Assuming the applicability of Section 70-a's fee-shifting provision in this case, the question turns to whether the defamation claim against Ms. Kirk was commenced without a "substantial basis in law or fact." N.Y. *Civ. Rights Law* § 70-a(1)(a). That question is easily answered in the affirmative. Because, as detailed above, the Complaint fails to state a defamation claim against Ms. Kirk as a matter of law on the basis of the fair report privilege, it, *a fortiori*, lacks a "substantial basis in law or fact" for purposes of Section 70-a's fee-shifting provision. *Bobulinski*, 758 F.Supp.3d at 184 ("Logically, a complaint that fails to state a claim is, *a fortiori*, without a *substantial* basis in fact and law and could not be supported by a *substantial* argument for the extension, modification or reversal of existing law.") (emphasis in original) (quotation marks omitted); *Harris*, 2021 U.S. Dist. LEXIS 226517 at \*38 (awarding attorneys' fees under Section

19

70-a where plaintiff "failed to plead any facts supporting even the most fundamental elements of his single cause of action"); *see also Reeves v. Associated Newspapers, Ltd.*, 218 N.Y.S.3d 19, 30-31 (1st Dep't 2024) (holding that "a complaint which fails to state a claim under CPLR 3211(a)(7) necessarily lacks a 'substantial basis in law'" and "entitles defendants to attorneys' fees pursuant to Civil Rights Law § 70-a[1]."); *accord 215 W. 84th St Owner LLC v. Bailey*, 217 A.D.3d 488, 488-89 (1st Dep't 2023) ("[T]he action was without a substantial basis in fact and law, as demonstrated by the court's dismissal of the complaint for failure to state a claim.") (quotation marks omitted).

Ms. Kirk is thus entitled to an award of her attorneys' fees and costs under New York's Anti-SLAPP law upon the granting of her motion to dismiss for failure to state a claim.

## CONCLUSION

Based on the foregoing reasons, Defendant Rylee Kirk respectfully requests that (1) the Court dismiss the Complaint's Seventh Cause of Action in its entirety and with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action, and (2) grant her an award of costs and attorney's fees as required by N.Y. *Civil Rights Law* §70-a(1)(a), together with such other and further relief as the Court deems just and proper.

Dated: August 25, 2025
      Albany, New York

GREENBERG TRAURIG, LLP

By: _/s/ Michael J. Grygiel_

Michael J. Grygiel
(Bar Roll No. 507829)
Kelly L. McNamee
(Bar Roll No. 520670)
54 State Street, 6th Floor
Albany, New York, 12207
Tel.: (518) 689-1400
Fax: (518) 689-1499
Email: grygielm@gtlaw.com
      mcnameek@gtlaw.com

*Attorneys for Defendant Rylee Kirk*

20

**CERTIFICATE OF SERVICE**

I, Michael J. Grygiel, hereby certify that on August 25, 2025, I caused the foregoing document to be electronically filed with the United States District Court for the Northern District of New York through the CM/ECF system, and that a copy is being served on all counsel of record via CM/ECF.

*/s/ Michael J. Grygiel*

Michael J. Grygiel
(Bar Roll No. 507829)

713919639v8