**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM MERRILL, JR., WILLIAM MERRIL, SR.,
CORINNA MERRILL, KAYLA MERRILL, TYLER
MERILL, BRANDON BITTNER, MEGAN JUDD,
SARAH KNIGHT, MELISSA LABBE,

                    Plaintiffs,

          v.                                                    6:25-cv-800 (AMN/CBF)

ONONDAGA COUNTY, JOHN/JANE DOES 1-6,
RYLEE KIRK, COURTNEE SAWYER, JHANASIA
MCBRIDE,

                    Defendants.

---

**APPEARANCES:**                                   **OF COUNSEL:**

**RUPP PFALZGRAF LLC**                             **R. ANTHONY RUPP, III, ESQ.**
1600 Liberty Building                              **YOUNG WOO KIM, ESQ**
Buffalo, NY 14202
*Attorneys for Plaintiffs*

**Onondaga County Department of Law**              **JOHN E. HEISLER, JR, ESQ.**
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, NY 13202
*Attorneys for Defendant Onondaga County*

**GREENBERG TRAURIG, LLP**                         **MICHAEL J. GRYGIEL, ESQ.**
54 State Street
6th Floor
Albany, New York 12207
*Attorneys for Defendant Rylee Kirk*

**JHANASIA MCBRIDE**
617 E. Hiawatha Blvd.
Syracuse, NY 13078
*Pro se Defendant*

1

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

I.     INTRODUCTION

On June 20, 2025, plaintiffs William Merrill, Jr., William Merrill, Sr., Corinna Merrill, Kayla Merrill, Tyler Merrill, Brandon Bittner, Megan Judd, Sarah Knight, and Melissa Labbe ("Plaintiffs") commenced this action asserting various claims pursuant to 42 U.S.C. § 1983, as well as one state law claim for defamation against defendant Rylee Kirk ("Defendant Kirk" or "Defendant"). *See* Dkt. No. 1 ("Complaint"). Plaintiffs' claims arise out of a vehicular encounter between plaintiff William Merrill, Jr. ("Plaintiff William Merrill, Jr." or "Plaintiff"), defendant Courtnee Sawyer ("Defendant Sawyer"), and defendant Jhanasia McBride ("Defendant McBride"), and the subsequent Onondaga County Sheriff's Office investigation leading to an article reported for *Syracuse.com* by Defendant Kirk. *Id.* at ¶¶ 24-70.

Presently before the Court is Defendant's partial motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6) as it relates to Plaintiff's[1] state law defamation claim ("the Motion"). Dkt. No. 19. Defendant also seeks costs and attorney's fees pursuant to New York's anti-SLAPP law. Dkt. No. 19-4 at 25-28;[2] *see* N.Y. Civ. Rights Law § 70-a(1)(a). Plaintiff did not oppose the Motion. *See generally* Docket. For the following reasons, the Court grants the Motion in part and denies it in part.

---

[1] Although the Complaint styles the defamation claim as brought by all Plaintiffs against Defendant*, see* Dkt. No. 1 at ¶ 112-119, Plaintiff William Merrill, Jr. is the only plaintiff referenced in the Article, *see* Dkt. No. 1 at ¶¶ 66, 113-114. As such, only Plaintiff William Merrill, Jr. may bring the defamation claim. *See Gilman v. Spitzer*, 902 F.Supp.2d 389, 394 (S.D.N.Y. 2012) ("it is essential that the allegedly defamatory comment refer to the plaintiff") (internal quotations and citation omitted).

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

## II.   BACKGROUND

### A.  The Parties

Plaintiff is a resident of Oneida County, New York.  Dkt. No. 1 at ¶ 8.  At all relevant times, Defendant was a resident of Onondaga County, New York.  *Id.* at ¶ 21.

### B.  Underlying Factual Allegations

Plaintiff alleges that while driving in Syracuse, New York, on September 13, 2024, he nearly collided with a vehicle driven by Defendant Sawyer and in which Defendant McBride was a passenger, leading to an altercation.  *See id.* at ¶¶ 24-32.  Plaintiff alleges that Defendants Sawyer and McBride later filed false police reports claiming that Plaintiff tried to drive Defendant Sawyer off the road, drove on the sidewalk, hit Defendant Sawyer's vehicle, brandished a weapon, used racial slurs, and yelled, "I'm gonna kill you."  *Id.* at ¶¶ 31; 104-06.  Plaintiff further alleges that these false claims were contradicted by footage from his dashboard camera, which had recorded the entire altercation.  *Id.* at ¶ 32.

Following the encounter on September 13, 2024, Plaintiff alleges that officers from the Onondaga County Sheriff's office visited his grandmother's and father's residence looking for Plaintiff.  *Id.* at ¶¶ 33-38.  On September 19, 2024, Plaintiff filed a complaint regarding that visit with the Onondaga County Sheriff's Office Internal Affairs division.  *Id.* at ¶ 39.  Then, on September 20, 2024, a warrant was issued for Plaintiff's arrest based on the false reports submitted by Defendants Sawyer and McBride, citing charges for Criminal Possession of a Weapon in the Third Degree, Menacing in the Second Degree, Reckless Endangerment in the Second Degree, and Criminal Mischief.  *Id.* at ¶¶ 40-41.  That same day, officers searched the residences of Plaintiffs William Merrill, Sr., Corinna Merrill, Kayla Merrill, Tyler Merrill, Brandon Bittner, Sarah Knight, Megan Judd, and Melissa Labbe, seeking to arrest Plaintiff.  *Id.* at ¶¶ 43-60.  Plaintiff

turned himself in on September 23, 2024, and was detained for two days. *Id.* at ¶ 61. Plaintiff asserts that after reviewing the dashboard camera footage, the District Attorney's office dropped all charges against him. *Id.* at ¶ 63.

### C. The Article

On September 25, 2024, Defendant published an article (the "Article") on *Syracuse.com* titled "Central NY man threatens to kill women, uses N-word in road rage incident, authorities say." *Id.* at ¶ 66; Dkt. No. 19-2. The day after, Plaintiff's attorney sent Defendant the dashboard camera footage and requested that Defendant retract the Article. Dkt. No. 16 at ¶ 67. *Syracuse.com* issued a correction to the Article on September 26, 2024, stating that "no gun was found." *Id.* at ¶ 68.

### D. Defamation Claim

Plaintiff brings a claim for defamation against Defendant under New York state law, asserting that Defendant's publication of allegedly false statements in the Article constitutes defamation per se against Plaintiff. Dkt. No. 16 at ¶ 116. Specifically, Plaintiff alleges that the following statements featured in the Article are false and defamatory: that Plaintiff (i) threatened to kill two women and a child during the traffic incident on September 13, 2024; (ii) used racial slurs, specifically the "N-word," during the traffic incident; (iii) displayed a handgun during the incident and waved it out the window of his vehicle; (iv) attempted to run the women's car off the road; (v) threw a water bottle at the women's car; (vi) physically attacked the women's vehicle, punching the mirror and kicking the door, causing damage; (vii) sent threatening emails to the Onondaga County Sheriff's Office claiming he was stalking deputies; and (viii) had threatened or was threatening to harm deputies. *Id.* at ¶ 114(a)-(h).

Plaintiff alleges that as a direct result of the Article's publication, he has suffered reputational harm, he was fired from his job, and he has not been able to find comparable new employment. *Id.* at ¶¶ 69-70, 118.

## III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"

5

*Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

## IV.    DISCUSSION

### A.  Plaintiff's Failure to Oppose the Motion

Although Plaintiff has failed to oppose Defendant's motion, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."  *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).  Accordingly, the Court considers whether dismissal of Plaintiff's defamation claim is appropriate on the merits.  *See, e.g.*, *Asemota v. City of New York*, No.24-CV-7793 (LAP), 2025 WL 2662301, at *3 (S.D.N.Y. Sept. 16, 2025) (considering merits of plaintiff's claims after concluding that plaintiff's failure to respond to motion to dismiss did not automatically warrant dismissal); *Bisel v. Acasti Pharma, Inc.*, No. 21 Civ. 6051 (KPF), 2022 WL 4538173, at *5 (S.D.N.Y. Sept. 28, 2022) (same).

### B.  Defamation and the Fair Report Privilege

To state a claim for defamation in New York, a Plaintiff must allege "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege."  *Johnson v. City of Newburgh*, 690 F. Supp. 3d 224, 240 (S.D.N.Y. 2023) (quoting *Albert v. Lokson*, 239 F.3d 256, 265 (2d Cir. 2001)).

As to the last element, Section 74 of New York's Civil Rights Law ("Section 74") provides for one such privilege by precluding a civil action "against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading to the report that is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74 (McKinney 1962). New York enacted this statute codifying the fair report privilege pursuant to First Amendment principles: to "avoid stifling an active, thriving, and untrammeled press and to ensure that the press receive broad protection." *Cummings v. City of New York*, No. 19-cv-7723 (CM) (OTW), 2020 WL 882335, at *15 (S.D.N.Y. Feb. 24, 2020) (internal quotations and citation omitted), *aff'd*, No. 21-1380, 2022 WL 2166585 (2d Cir. 2022).

In accordance with these principles, "New York courts have broadly construed the meaning of an official proceeding as used in Section 74" to find that a report concerns an official proceeding when it "concerns actions taken by a person officially empowered to do so." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 214 (N.D.N.Y. 2014) (citations omitted). Additionally, for a report of an official proceeding to be considered "fair and true" within the meaning of Section 74, it need only be a "substantially accurate" report of the proceeding. *Jeanty v. City of Utica*, No. 6:16-cv-00966 (BKS/TWD), 2017 WL 6408878, at *18 (N.D.N.Y. Aug. 18, 2017) (citations omitted), *reconsideration denied in part*, No. 6:16-cv-00966 (BKS/TWD), 2018 WL 2383582 (N.D.N.Y. May 25, 2018), *aff'd sub nom. Jeanty v. Cerminaro*, No. 21-1974-cv, 2023 WL 325012 (2d Cir. Jan. 20, 2023). Finally, where a court has all the relevant documents, "it may determine as a matter of law whether allegedly defamatory publications are 'fair and true' reports of official proceedings." *Id.* at *18 (citations omitted).

7

### C. The Fair Report Privilege Applies

Here, Defendant argues that the Complaint "unequivocally established that the Article accurately reported the description of Plaintiff's conduct as conveyed to law enforcement authorities, culminating in the criminal charges against [Plaintiff,]" and therefore, Defendant is entitled to absolute immunity from claims arising from the Article under New York's fair report privilege. Dkt. No. 19-4 at 18. The Court agrees.[3]

First, the Court finds that the investigation into Plaintiff by the Onondaga County Sheriff's Office, as well as Plaintiff's subsequent arrest and the criminal charges filed against him, fall within the broad meaning of "official proceeding" under Section 74. *See Jeanty,* 2017 WL 6408878, at *18 (stating that under Section 74, "arrests and investigations may constitute official proceedings"); *Fine*, 11 F. Supp. 3d at 216 (holding that an investigation by the Syracuse Police Department constituted an "official proceeding under [Section] 74"); *see also Hornyak v. Hearst*, 66 N.Y.S.2d 848, 849 (N.Y. Sup. Ct. 1946), *aff'd*, 71 N.Y.S.2d 713 (N.Y. App Div. 1947) (holding that official proceedings for the purpose of determining a fair and true report included "the arrest, the charge, the commitment, the indictment, the parole and the discharge" of plaintiffs). Plaintiff alleges that Defendants Sawyer and McBride filed false police reports against him concerning the vehicular encounter and that those reports led to officials charging him criminally. Dkt. No. 1 at ¶¶ 104-06. Given that Plaintiff alleges that these statements were made to officials in the course

---

[3] The Court considers the Article itself for the purpose of this Motion. Because Plaintiff refers to the existence and content of the Article in the Complaint, the Court finds that it is integral to the Complaint. *See generally* Dkt. No. 1. Additionally, courts considering the applicability of the fair report privilege routinely consider the article alleged to be defamatory, even when only submitted by a defendant. *See, e.g.*, *Bauer v. Baud*, No. 22-CV-1822 (PAC), 2023 WL 2307413, at *1 (S.D.N.Y. Mar. 1, 2023).

of an investigation and that they are the basis for the criminal charges brought against him, they fall within the ambit of an official proceeding.

Second, the Court finds that the Article is a fair and true report of the investigation and the resulting criminal charges. The Article clearly relies on "court documents," Dkt. No. 19-2 at 2, "court papers," *id.* at 4, statements made by deputies, *id.*, and deputies' accounts of statements made to them, *id.* at 2-4. Furthermore, the title of the Article ends with a qualifier, "authorities say," indicating the use of government sources. *Id.* at 2. Furthermore, at no point does Plaintiff allege that Defendant inaccurately represented any of the relevant statements, only that the content of those statements was false. *See* Dkt. No. 1 at ¶¶ 113-16.

Plaintiff alleges that Defendant "knew these statements were false or acted with reckless disregard for their truth or falsity" because the dashboard camera footage contradicted the false allegations made by Defendants Sawyer and McBride and because the charges against Plaintiff were dropped and yet Defendant did not retract the Article. *Id.* at ¶ 117(a)-(c). However, a reporter need not fact-check the reported statements or provide other competing information for the report to be a "fair and true" report. *See Jeanty,* 2017 WL 6408878, at *19 ("[T]he accuracy of [the district attorney's] statements is beside the point. [Defendant] was not required to fact-check the [district attorney's] official statements, only to provide a fair and true report of them."); *Brewer v. Herald*, No. 3:14-cv-958 (GLS/DEP), 2016 WL 4435232, at *4 (N.D.N.Y. Aug. 18, 2016) (finding that publications' content parroting an official press release were "fair and true" reports, regardless of whether publications were accurate); *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (N.Y. App. Div. 2009) ("[T]here was no requirement that the publication report the plaintiff's side of the controversy"); *Glantz v. Cook United, Inc.*, 499 F. Supp. 710, 715 (E.D.N.Y. 1979) ("[E]ncompassed within the privilege is the right to publish a 'fair and true' report which contains

information that is 'false' as a matter of fact."); *see also* Restatement (Second) of Torts § 611 cmt. a (1977) ("[T]he privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false.").

Moreover, it does not matter whether Defendant had actual or constructive knowledge of the outcome of Plaintiff's criminal case.  *See, e.g.*, *Easton v. Public Citizens, Inc.*, No. 91 CIV. 1639 (JSM), 1991 WL 280688, at *5 (S.D.N.Y. Dec. 26, 1991), *aff'd sub nom. Easton v. Public Citizen, Inc.*, 969 F.2d 1043 (2d Cir. 1992) (finding it unnecessary for purpose of Section 74 to assess whether defendant publisher knew the outcome of plaintiff's trial).  All that is needed for the privilege to apply is a "substantially accurate" report of the official proceeding, which is what Defendant provided here.  Plaintiff is free to dispute the truth of the statements made to officials investigating his conduct, but that dispute is not a permissible ground on which to bring a civil action against a newsperson for truthfully reporting that those statements were made.  *See id.* ("The purpose of Section 74 is to protect absolutely from liability for libel one who, *without concerning himself in the slightest with the truth of defamatory statements made of or concerning another in the course of an official proceeding,* publishes a fair report of that proceeding including the libelous matter.") (brackets omitted) (emphasis in original).

The Court accordingly grants Defendant's Motion as to Plaintiff's claim for defamation.

### D.  Attorney's Fees and Costs

As part of the Motion, Defendant also seeks an award of attorney's fees and costs pursuant to New York's anti-SLAPP law, codified in N.Y. Civil Rights Law § 70-a ("Section 70-a"). "'SLAPP' is an acronym for 'strategic litigation against public participation.'"  *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 564 (S.D.N.Y. 2025) (citation and internal quotation marks omitted).  "A number of states, including New York, 'have enacted "anti-SLAPP statutes" with the

10

idea that they provide breathing space for free speech on contentious public issues,' and 'decrease the "chilling effect" of certain kinds of libel litigation and other speech-restrictive litigation.'" *Id*. (quoting *La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020)).   In 2020, New York amended Section 70-a "to broaden the scope of the law and provide greater protections to defendants." *Id.* (quoting *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022)) (other citations omitted).

In relevant part, Section 70-a provides:

1. A defendant in an action involving public petition and participation, as defined in [Section 76-a] of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:

(a) costs and attorney's fees shall be recovered upon a demonstration, including an adjudication pursuant to [C.P.L.R. 3211(g)] or [C.P.L.R. 3212(h)], that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law[.]

N.Y. Civ. Rights Law § 70-a(1)(a) (McKinney 2020).[4]  Guided by Section 76-a, courts have applied Section 70-a broadly to communications on issues of public interest, which include "any subject other than a purely private matter." *Kesner v. Buhl*, 590 F.Supp.3d 680, 693 (S.D.N.Y. 2022), *aff'd sub nom.*, 2023 WL 407292 (2d Cir. June 20, 2023) (citing N.Y. Civ. Rights Law §76-a) (other citations omitted).

Defendant argues that the Article involves an issue of public interest because it "fairly and accurately reports on official proceedings concerning allegations that Plaintiff threatened to kill women and used racial slurs in connection with a road rage incident[,]" and, as such, litigation arising out of the Article is subject to Section 70-a.  Dkt. No. 19-4 at 26.  Defendant also argues

---

[4] N.Y. C.P.L.R. 3211(g) provides for a specialized motion to dismiss for failure to state a claim in an action covered by Section 70-a. N.Y. C.P.L.R. 3212(h) provides for a specialized motion for summary judgment for the same.

that because Plaintiff fails to state a defamation claim as a matter of law, the claim *a fortiori* lacks a "substantial basis" in fact or law and is thus subject to Section 70-a. *Id.* at 27.

The Court must first consider whether it may make an award pursuant to Section 70-a concurrent with a Rule 12(b)(6) dismissal. Defendant acknowledges that courts within this Circuit have debated whether Section 70-a is applicable in federal court. *Id*. at 18-19. Because it concludes that Section 70-a does not permit an award of attorney's fees and costs on a Rule 12(b)(6) dismissal in federal court, the Court declines to make such an award. *See Wang v. Sussman*, No. 24-CV-3987 (AS), 2025 WL 2607155, at *4 (S.D.N.Y. Sept. 9, 2025), *appeal filed*, No. 25-2503 (2d Cir. Oct. 9, 2025).

The Court finds the analysis in *Wang* persuasive. As in this case, the defendant in *Wang* argued that a dismissal pursuant to Rule 12(b)(6) establishes that the claim at issue *a fortiori* lacks a "substantial basis" under Section 70-a. *Id.* at *4. Without deciding whether a federal court may apply Section 70-a generally, the court disagreed, noting that "when addressing what happens on a motion to dismiss or motion for summary judgment on a defamation plaintiff's claims, [Section 70-a] specifically references 'an adjudication pursuant to' CPLR 3211(g), New York's specialized motion-to-dismiss statute for cases covered by the anti-SLAPP law, or CPLR 3212(h), its specialized summary-judgment statute." *Id*. (citing N.Y. Civ. Rights Law § 70-a(1)(a)). The court further noted the difference between the standards applied pursuant to Rule 12(b)(6) and CPLR 3211(g), as well as the differences in procedure under each provision, including the availability of discovery pursuant to CPLR 3211(g). *Id*. at *5-6 & n.1. Given the plain language of Section 70-a referring to CPLR 3211(g), and the differences between Rule 12(b)(6) and CPLR 3211(g), the court found that Section 70-a did not permit an award of attorney's fees and costs on a Rule 12(b)(6) dismissal and denied the defendants' motion. *Id*. at *4-7 (citing, *inter alia*, *La Liberte*,

12

966 F.3d at 88-89 (2d Cir. 2020) (no fee-shifting for Rule 12(b)(6) dismissal of SLAPP case where "[t]he [state law] does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6)") (citation omitted)).

For the same reasons, the Court denies Defendant's Motion seeking an award of attorney's fees and costs pursuant to Section 70-a.[5]

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's state law claim for defamation be **DISMISSED**; and the Court further

**ORDERS** that Defendant Kirk be **DISMISSED** from this action; and the Court further

**ORDERS** that Defendant's Motion for attorney's fees and costs be **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 17, 2026
     Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[5] To the extent that Plaintiff may have waived or conceded the issue for lack of opposition, the Court notes that Defendant's Motion still fails because Section 70-a by its own terms does not provide for an award of attorney's fees and costs on a Rule 12(b)(6) motion.